BYRNES, Judge.
Plaintiff, an injured worker, appeals a judgment of the district court which found him to be a “part time” employee under the provisions of the Louisiana Worker’s Compensation Act and denied his request for penalties and attorney fees. La.R.S. 23:1021(9) and 23:1201.2. We affirm the judgment of the district court.
The facts surrounding this work-related accident are set forth in the plaintiffs petition and provide in pertinent part:
II.
On or about February 22, 1988, the petitioner was employed by the Employer, which was engaged in a business hazardous within the meaning of the Act, when the petitioner, while working within the course and scope of his employment, sustained injuries when moving a bundle of metal studs.
III.
As a result of the aforementioned accident, the petitioner sustained severe, painful and permanent injuries to the bones, ligaments, tendons, nerves and vessels of his body, and more particularly his back and legs.
IY.
As a result of the said accident and injuries, your petitioner is and will be permanently disabled from obtaining or performing any type of gainful employment and/or partially disabled and/or suffered disminishment of earning capacity.
At trial the parties stipulated that the plaintiffs accident occurred in the course and scope of his employment. They also agreed as to the nature of Ortiz’ injuries and disability. As such, they agreed that the sole issue before the court was the nature of the plaintiff’s employment. In this vein the parties offered into evidence the deposition testimony of the plaintiff ad three witnesses.
In the plaintiff’s deposition testimony presented to the district court, Miguel Ortiz, stated that on the date in question he had been hired as a carpenter, by the defendant. He first worked for King & Company on the LL & E Building on Poydras Street in May 1987, and the last job he worked for them was at the Airport Hilton. In this later job he worked 4-5 weeks at 40 hours a week when the weather permitted and with time off for Mardi Gras. His rate of pay was 12.17 per hour.
According to Ortiz, the general foreman for the defendant company, Cecile Jones, contacted the union to hire employees. The procedure for hiring within the union hall is by a number selection process. A worker is given a number and placed on a list wherein the lowest number is called first when a job is available. Ortiz acknowledge that a worker may refuse a job for any reason. According to Ortiz, when a worker accepts a job through the union he does not know whether he is going back to that job the next day. The companies that hire workers through the union usually do not specify the length of the job. The plaintiff stated that a job could last five years and if you are a good worker, you could be called back to it repeatedly. However, he also stated that a job could last three hours and, as such, you are afforded only three hours work. A worker is not told at the end of the day to return the next day but they just reappear for work, according to Ortiz. Generally, if additional work existed, the employer asks the union to “rehire” workers and this usually involved the same men performing the work. The plaintiff testified that he was called three times by Jones, from the inception of his employment with the defendant company in May, 1987, until the date of the accident.
The plaintiff stated that during the time he worked forty hours some weeks and some weeks he worked less. On May 18, 1987, June 12, 1987 and June 25, 1987 the plaintiff worked a seven hour day and he could not recall the reason why he worked this number of hours. During the week of June 23, 1987 he worked only four days. *1264 He did not know whether the reason was that the job had been completed. During the week of July 8, 1987 the plaintiff worked four 9 hour days and he believed that this was to adjust for the July 4th holiday, but he was not certain. He could not recall if the job ended that week. Ortiz also missed work on September 7, 1987 and September 15, 1987 for reasons he could not explain. On September 29, 1987 he worked 5½ hours. During the week of September 29, 1987 Ortiz worked two days and on September 28, 1987 he worked only five hours. On these occasions the plaintiff could not explain his absences. During October, 1987, the plaintiff worked only eight hours during the week of the 6th; 4 hours on October 13, 1987 and 32 hours the week of the 27th. Except for the possibility of a legal holiday during the week of October 27, 1987 the plaintiff was not able to recall the reasons for his failure to work. Ortiz acknowledged that he worked only 3 hours on November 3, 1987. He also admitted working 5¾⅛ hours on the first day of the week ending February 2, 1988; 8 hours on the second day of that week and 2 hours on February 3, 1988. Again he was unable to explain the time missed from work.
He did not know whether King & Company, Inc. was the only company he worked for during 1987. Although Ortiz could not recall his gross wages for 1987 he did acknowledge that his W2 earnings statement from the defendant reflected gross wages for 1987 in the amount of $7,306.39.
Ortiz testified that he assumed he was a full time worker. He further stated that no one from the defendant company, including Mr. Jones, told him he was a part time employee. Ortiz acknowledged being available, ready and willing to work if he had been wanted or needed. Plaintiff concluded that if he did not work 40 hours it was as a result of his employer's decision.
Larry Bourg, the business representative for the union hall, testified that he signed the contract between the carpenters and King & Company, Inc. Bourg stated the contract contemplated that there exist a forty hour work week. According to Bourg, workers were hired from the union on a full time basis, with the employer controlling the amount of time they worked.
The hiring procedure for a carpenter through the union is that an employer calls the union and specifies the number of men desired. The carpenters are then chosen by the union, on the basis of their assigned number with perference given to the men with the lowest numbers. The worker has the option of whether or not to accept the job and the job foreman has the option of calling an individual worker back to the job. The foreman may also terminate the job, even if the workers have not worked an eight hour day.
Bourg testified that the contractors may sometimes estimate how long a job will last, but this is seldom done. The union likes to know the length of the jobs because some men want long jobs, while others desire day-to-day work. Bourg stated that not all carpenters are union workers and some union carpenters work non-union jobs.
This witness stated that, from January 1986 until August 1987, Miguel Ortiz worked with the defendant 111 hours. This time was in May, 1987. Plaintiff worked 151 hours in June 1987 and 98 hours in July. For the months of July through August, the plaintiff worked 16 hours. He worked 101.5 hours in September, 129 in October, and he worked 35 hours in November. According to Larry Bourg, he was not notified that the work for the defendant was part time.
Cecil Jones the general superintendent for King and Company, Inc. testified that he was responsible for hiring union labor for his company’s carpentry work during 1987 and 1988. He stated the hiring process for the employers consisted of the employer calling the union and requesting a certain number of carpenters. They would not request specific employees. The union would send people from their list and those who were qualified would work. The length of time involved would depend upon the job. It was generally understood by the worker that he would not necessarily *1265 keep the job until its completion. The worker would be laid off once the job ended. If another job existed for the same employer, within, 60 days, they, the worker could be called back. This is not an obligation but, rather, a courtesy which was extended within the trade.
According to Jones, the plaintiff performed dry wallwork, metal studs and sheetrock work. Of this work, 99% was performed inside. At the time of his injuries, the plaintiff was working at the Airport Hilton. The number of men on that job had been cut back from 65 to 15 and, because of this, the plaintiff would not necessarily have been working if he had not gotten hurt. The men on this job generally worked 8 hour days, 5 days a week if the weather and job length permitted.
The contract executed by the union and defendant employer stated that the work day involved 8 consecutive hours beginning no later than 7:00 a.m. and ending no later than. 4:30 p.m. This type contract which calls for 8 hour days and a 40 hour weeks does not guarantee 40 hours work per week. Cecil Jones stated that all that is guaranteed under such a contract is a union rate of pay for whatever number of hours an employee works. The job determines the number of hours and an eight hour day exist if the weather and the job permit the same. According to Jones, the plaintiff worked at a union job as long as he needed a job. He was subject to be laid off at any time and he knew this. Jones did not know if the plaintiff was always available for work because Jones was not on the job every day. Jones testified he did not specifically tell Ortiz that he was a part time employee because Jones stated the plaintiff knew this fact.
The issues presented on appeal are: 1) Did the trial court err in ruling that the plaintiff was a “part time” employee; 2) Did the trial court err in determining that the plaintiff was paid the proper amount of weekly compensation; and 3) Did the trial court err in denying the plaintiff’s request for penalties and attorneys fees.
Plaintiff contends that he was a full time employee and the trial court erred in finding him to be a part time employee.
The Louisiana Worker’s Compensation Act defines a part time employee as follows:
LA.R.S. 23:1021 Terms Defined
(9) “Part-time employee” means an employee who as a condition of his hiring knowingly accepts employment that (a) customarily provides for less than forty hours per work week, and (b) that is classified by the employer as a part-time position.
In this case, Mr. Ortiz testified he believed he was a full time employee, because no one informed him he was part time. He alleged that he was available, ready and willing to work if needed. This belief was also expressed by Larry Bourg, the union hall representative. However, this belief is in conflict with certain facts supplied by plaintiff and the other witnesses, concerning this plaintiff’s employment.
The plaintiff testified that a worker may refuse any job. He admitted that a job may last years or hours and although one is initially called to work, the employee may not be rehired the next day. He also admitted that during his tenure with the defendant he sometimes worked forty hour weeks and sometimes less. He did not work at all for the defendant in the first quarter of 1987 and he worked sporadically thereafter for the remainder of the year. His total earnings with this employer for 1987 were $7,306.39. During the time he did work it was often for less than full work weeks and less than full days within the week. The plaintiff could offer no explanation for the vast amount of these absences.
Additionally, Cecil Jones the defendant’s general superintendent testified that the length of time to be worked depended upon the job and it was generally understood by the workers that they would not necessarily keep the job until completion. Although the job plaintiff was working involved 8 hour days, 5 days a week if the weather and job length permitted, there was no guarantee plaintiff would have continued *1266 to work for this employer if he had not been injured because the number of workers on this job had been severely curtailed. Jones also testified that although the job called for 8 hour days and a 40 hour week it was generally understood no guarantee existed that a worker would work 40 hours per week. The job determined the number of hours and the only guarantee was that a worker would receive a union rate of pay, when he works. According to Jones, the plaintiff was subject to be laid off at any time and he knew it. Jones also stated that the plaintiff knew he was a part time employee and for this reason he did not have to be informed of this fact.
Considering the conflict in the testimony, it was within the discretion of the trial judge to find, under the facts presented, that plaintiff was a “part time employee” in that he knowingly accepted employment that customarily provided for less than 40 hours per work week and he knowingly accepted employment which was classified by the employer as a part time position. We cannot say that finding is clearly wrong, considering the facts of this case. Arceneaux v. Domingue, 365 So.2d 1330 (La., 1978).
Plaintiff argues that even if he is considered a part time employee, his rate of compensation is incorrect. He reasons that the four full weeks preceding the date of the injury includes the week of the injury. Thus he concludes that he worked 116.5 hours, with the average hours worked for the period being 29.125 hours at $12.17 per hour. Therefore he argues that the plaintiff is entitled to 66%% of $354.45 or $236.27 per week in compensation. La.R.S. 23:1021(10)(a)(iii) and 1221(1).
Louisiana Revised Statute Title 23 Section 1221(1) provides for disability benefits for a worker who has sustained temporary total disability:

La.R.S. 23:1221. Temporary total disability; permanent total disability; supplemental earnings benefits; permanent partial disability; schedule of payments:

Compensation shall be paid under this Chapter in accordance with the following schedule of payments.
(1) Temporary total. For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
The employee’s “wage” for purpose of this computation is set forth in Louisiana Revised Statute, Title 23 Section 1021(10)(a)(iii) as follows:
(10) “Wages” means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows: (a) Hourly wages.
* * * !⅜ He 5⅜
(iii) If the employee is paid on an hourly basis and the employee is a part-time employee, his hourly wage rate multiplied by the average actual hours worked in the four weeks preceding the date of the injury, (emphasis supplied)
In this case, plaintiff was injured on February 22, 1988 which was the end of a pay period. In the first full week immediately preceding the date of the injury, which ended February 16th, he worked 32.0 hours. In the second full week preceding the date of the injury, the week ending February 9th, he worked 34 hours. In the third full week preceding the date of the injury, which was the week ending February 2nd, the plaintiff worked 13.5 hours. He did not work at all in the last week of January, 1988. The total hours actually worked are 79.5 with an hourly rate of pay of $12.17. Thus, the formula for temporary total disability is: 66% X (79.5 X 12.-17) = $161.26.
Since the clear language of the statute specifies the hours worked shall be derived from the four full weeks preceding the accident date, the week in which the injury *1267 occurred was correctly excluded from the calculation. In this case the sum of $161.26 per week compensation was correct and we find no error in that regard.
In his final assignment of error, plaintiff alleges that the trial court erred in denying his request for attorney’s fees and penalties. He argues that attorney fees and penalties are warranted because the compensation carrier arbitrarily and capriciously designated plaintiff a part time employee and because they incorrectly computed his rate of compensation.
The Louisiana Worker’s Compensation Act provides for an award of attorney’s fees and penalties on the following occasion:
La.R.S. 23:1201.2. Failure to pay claims; discontinuance; attorney’s fees
Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney’s fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney’s fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney’s fees for the prosecution and collection of such claims.
Since we find that the plaintiff was correctly classified as a part time employee and we further find that his rate of compensation was computed correctly, we concur in the trial court’s decision to deny an award of attorney fees and penalties in this case.
For the reasons herein ascribed the judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.
WILLIAMS, J., dissents in part and assigns reasons.